UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
CARLOS CONTRERAS,                                    2:25-cv-00418-NJC-AYS

                Plaintiff,

   -against-

POLAR PROPERTY SERVICES, INC.,
JOHN A. ROMANELLI, and RICHARD
P. SCULCO,

                Defendants.
-----------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO PARTIALLY DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P.12(b)(6)**

Respectfully submitted by,

THE NHG LAW GROUP, P.C.
*Attorneys for the Defendants*
4242 Merrick Road
Massapequa, New York 11758
Tel: 516.228.5100

Counsel on the Brief:

Keith E. Williams, Esq.

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................................ii

TABLE OF AUTHORITIES ..........................................................................................................iii

I.  PRELIMINARY STATEMENT ..................................................................................1

II.  PROCEDURAL HISTORY ..........................................................................................1

III.  STATEMENT OF FACTS ............................................................................................2

IV.  LEGAL ARGUMENT ...................................................................................................3

    A.  Standard for Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted Pursuant to Fed. R. Civ. P. 12(b)(6) ................................................................................................3

    B.  Plaintiff Seeks Compensation for Non-Compensable Commute Time under the Portal-to-Portal Act. ..................................5

        1.  The Portal-to-Portal Act and Its Exclusion of Commute Time ................................................................................5

        2.  Normal Commute Time Is Not Compensable under Established Law ............................................................................7

        3.  Incidental Activities During the Commute Do Not Render It Compensable .........................................................................7

        4.  From March 1, 2021 through August 31, 2022, Plaintiff's Commute from Defendants' Place of Business to the Job Sites and Back Is Noncompensable as a Matter of Law ........................................8

    C.  Plaintiff Has Failed to State a Viable Claim for Unpaid Overtime during the Period of March 1, 2021 through August 31, 2022 under the FLSA or the NYLL ..................................12

    D.  Plaintiff Has Failed to State a Claim for Unpaid Regular Wages under the NYLL during the Period of March 1, 2021 through August 31, 2022 ......................................................................13

    E.  Plaintiff Has Failed to State a Claim for Defendants' Alleged Failure to Provide Wage Statements and Notices .............................15

V.  CONCLUSION ............................................................................................................16

# **TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) ...............................................................5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...............................................................................................4

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................4

*Colella v. City of New York*, 986 F. Supp. 2d 320 (S.D.N.Y. 2013) ...............................................7, 8

*Erdemir v. Allstate Marble & Granite, Kitchens & Baths Inc.*, 704 F. Supp. 3d 337 (E.D.N.Y. 2023), *aff'd*, 2025 WL 338551 (2d Cir. Jan. 30, 2025) ........................................................................12, 13

*Hosking v. New World Mortg., Inc.*, 602 F. Supp. 2d 441 (E.D.N.Y. 2009) ......................................12

*IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005) ........................................................................................6, 9

*Integrity Staffing Sols. v. Busk*, 574 U.S. 27 (2014) .......................................................................6, 9

*Kavanagh v. Grand Union Company, Inc.*, 192 F.3d 269 (2d Cir. 1999) .......................................7, 13

*Keiler v. Harlequin Enters.*, 751 F.3d 64 (2d Cir. 2014) ....................................................................3

*Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106 (2d Cir. 2013) ..............................4

*Manners v. State of New York*, 183 Misc. 2d 382, 390, 703 N.Y.S.2d 375 (Ct. Cl. 2000), *aff'd*, 285 A.D. 2d 858, 727 N.Y.S.2d 547 (3d Dep't 2001) .............................................................................7

*Reich v. N.Y. City Transit Auth.*, 45 F.3d 646 (2d Cir. 1995) ........................................................5, 8

*Singh v. City of New York*, 524 F.3d 361 (2d Cir. 2008) ...................................................................8

*Solis v. SCA Rest. Corp.*, 938 F. Supp. 2d 380 (E.D.N.Y. 2013) .....................................................12

*Tacuri v. Nithin Constr. Co.*, 14-cv-02908 (CBA)(RER), 2015 WL 790060 (E.D.N.Y. Feb. 24, 2015) ............................................................................................................13

*Tanski v. AvalonBay Communities, Inc.*, 15-cv-06260 (AKT), 2016 WL 8711203 (E.D.N.Y. Sept. 30, 2016) ...............................................................................4

*Tennessee Coal, Iron & R. Co. v. Muscoda Loc. No. 123*, 321 U.S. 590 (1944)................................................................................................................................5

*Vega v. K & C Interior Constr. Corp.*, 18-cv-00182, 2018 WL 4376486 (E.D.N.Y. Aug. 28, 2018), *report and recommendation adopted*, 18-cv-00182 (ARR), 2018 WL 4374911 (E.D.N.Y. Sept. 13, 2018) .............................................................................. 14

*Williams v. City of New York*, 03-cv-05342 (RWS), 2005 WL 2862007 (S.D.N.Y. Nov. 1, 2005) ........................................................................... 3

*Williams v. Epic Sec. Corp.*, 358 F. Supp. 3d 284 (S.D.N.Y. 2019) ........................................... 7

**Statutes**

29 U.S.C. § 207(a)(1) ............................................................................................................... 12

29 U.S.C. § 254(a) ........................................................................................................ 6, 7, 9, 13

29 U.S.C. § 254(a)(2) ................................................................................................................. 6

N.Y. Lab. Law § 191(1) ........................................................................................................... 13

N.Y. Lab. Law § 195(1)(a) ....................................................................................................... 15

N.Y. Lab. Law § 195(3) ........................................................................................................... 15

N.Y. Lab. Law § 198(1-b) ........................................................................................................ 15

N.Y. Lab. Law § 198(1-d) ........................................................................................................ 15

N.Y. Lab. Law § 198) ............................................................................................................... 14

**Regulations**

12 N.Y.C.R.R. § 142-2.2 .......................................................................................................... 14

29 C.F.R. § 778.112 .................................................................................................................. 14

29 C.F.R. § 785.35 .................................................................................................................. 7, 9

## I.     PRELIMINARY STATEMENT

Defendants, POLAR PROPERTY SERVICES, INC. ("Polar Property Services"), JOHN A. ROMANELLI ("Romanelli"), and RICHARD P. SCULCO ("Sculco") (collectively, "Defendants"), by and through their counsel, THE NHG LAW GROUP, P.C., respectfully submit this Memorandum of Law in support of their Motion to Partially Dismiss the Amended Complaint filed by Plaintiff, CARLOS CONTRERAS ("Plaintiff"), pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6).

Defendants respectfully move this Court for an Order partially dismissing the Amended Complaint on the grounds that Plaintiff has failed to state a claim upon which relief can be granted with respect to his claims for unpaid overtime compensation under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") (Claims I and II) during the time period of March 1, 2021 through August 31, 2022, as well as his claims for unpaid regular wages, failure to provide wage statements, and failure to provide wage notices under the NYLL (Claims III, IV, and V) during the same time period.

For the foregoing reasons, and as set forth more fully herein, Defendants respectfully request that this Court enter an Order granting Defendants' Motion to Partially Dismiss, together with such other and further relief as the Court deems just and proper.

## II.    PROCEDURAL HISTORY

Plaintiff initiated this action by filing a Complaint against Defendants on January 24, 2025. *See gen.*, Compliant, attached to the Declaration of Keith E. Williams, Esq. in Support (the "Wms. Decl.") at Exhibit A ("Ex. A"). On February 27, 2025, Defendants agreed to waive formal service of process. *See gen.*, Waiver of the Service of Summons, dated February 27, 2025 and filed on February 28, 2025 on the Court's Electronic Case Filing ("ECF") system at Docket Entry ("D.E.") 10. On April 1, 2025, the Court set a briefing schedule in connection with Defendants' Motion to

1

Dismiss Plaintiff's Complaint. On April 21, 2025, Defendants served their motion papers and filed the cover letter with the Court. *See* D.E. 13. Plaintiff failed to file a timely Amended Complaint or opposition to Defendants' Motion to Dismiss. *See* D.E. 16, 17. Defendants filed their unopposed Motion to Dismiss on May 15, 2025. *See* D.E. 14, 15. The Court then granted Plaintiff's request to file an untimely Amended Complaint on May 19, 2025. On May 22, 2025, Defendants filed a Pre-Motion Conference Letter in advance of filing a Motion to Dismiss the Amended Complaint. *See* D.E. 19. Plaintiff filed a letter in response on May 29, 2025, *see* D.E. 20, and the Court held a Pre-Motion Conference on August 22, 2025. Defendants now respectfully move this Court for an Order partially dismissing Plaintiff's Amended Complaint with prejudice.

### III.   STATEMENT OF FACTS[1]

According to the Amended Complaint, Plaintiff was employed by Polar Property Services as a laborer and driver from approximately March 1, 2021 until on or about February 9, 2024. *See* Amended Complaint, Ex. B, at ¶¶ 26-28. Polar Property Services is a company engaged in providing property maintenance and construction services in Nassau County, New York. *See* Amended Complaint, Ex. B, at ¶¶ 8-9.

Plaintiff alleges that throughout the entirety of his employment his scheduled workweek was Monday through Friday, from 8:00 a.m. to 4:00 p.m. each day. *See* Amended Complaint, Ex. B, at ¶ 36. Plaintiff further alleges that, outside of his scheduled work hours, he was required to drive a company vehicle before 8:00 a.m. and after 4:00 p.m. *See* Amended Complaint, Ex. B, at ¶¶ 33-35, 39-40. He asserts that he was not compensated for this pre- and post-schedule drive time. *See* Amended Complaint, Ex. B, at ¶¶ 37, 41.

---

[1] The following facts are drawn from Plaintiff's Amended Complaint and are assumed to be true solely for purposes of this motion pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants expressly deny the merits of Plaintiff's allegations and reserve all rights with respect to any and all defenses available in this action.

Specifically relevant to this motion, Plaintiff alleges that during the first year and a half of his employment, from March 1, 2021 through August 31, 2022, he was required to report to Defendants' place of business at 7:00 a.m. to pick up the work van and drive it to the work site.[2] *See* Amended Complaint, Ex. B, at ¶¶ 33-34. He alleges that the work van contained tools, equipment, and one (1) other employee. *See* Amended Complaint, Ex. B, at ¶ 34. He also alleges that he was required to drive the work van back at the end of the day, arriving at Defendants' place of business no later than 5:30 p.m. *See* Amended Complaint, Ex. B, at ¶ 35.

Plaintiff further alleges that for the remainder of his employment, from September 1, 2022 through February 9, 2024, he drove the work van from his residence to the job sites and back each day, but that he was required to pick up another employee on the way, which added approximately thirty (30) minutes to each commute.[3] *See* Amended Complaint, Ex. B, at ¶¶ 39-40.

Additionally, Plaintiff asserts that Defendants failed to furnish him with a payroll notice at the time of hire and did not provide him with weekly wage statements with each payment of wages. *See* Amended Complaint, Ex. B, at ¶¶ 42-43.

IV.  **LEGAL ARGUMENT**

    A.    **Standard for Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted Pursuant to Fed. R. Civ. P. 12(b)(6)**

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept as true all allegations in the complaint and draw all reasonable inferences in the non-moving party's favor. *See Keiler v. Harlequin Enters.*, 751 F.3d 64, 68 (2d Cir. 2014); *see also Williams v. City of New York*, 03-cv-05342 (RWS), 2005 WL 2862007, at *4-5 (S.D.N.Y. Nov. 1, 2005) ("In

---

[2] This is a marked departure from Plaintiff's original allegation in his Complaint that he was required to arrive at 7:30 a.m., raising genuine concerns regarding the veracity of Plaintiff's claims. *See* Complaint, Ex. A, at ¶ 35.
[3] Defendants do not seek dismissal of Plaintiff's claims during this period of his employment.

3

considering a motion to dismiss pursuant to [Rule 12(b)(6)] the Court should construe the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor[]") (internal citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As a result, legal conclusions "must be supported by factual allegations." *Id.* at 679. Accordingly, to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Under Federal Rule of Civil Procedure 8(a)(2), a 'plausible' claim contains 'factual content that allows the court to draw the reasonable inference that the [party] is liable for the misconduct alleged.'" *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). "[A pleader's] obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Rather, the factual allegations must "possess enough heft to show that the pleader is entitled to relief." *Id.* at 557. Thus, unless a party's well-pleaded allegations have "nudged [his] claims across the line from conceivable to plausible, [the party's] complaint must be dismissed." *Id.* at 570; *Iqbal*, 556 U.S. at 680. This standard is met when the party pleads "enough facts to state a claim to relief that is plausible on its face." *Tanski v. AvalonBay Communities, Inc.*, 15-cv-06260 (AKT), 2016 WL 8711203, at *6 (E.D.N.Y. Sept. 30, 2016) (quoting *Twombly*, 550 U.S. at 570); *see also Lundy*, 711 F.3d at 115.

4

### B.   Plaintiff Seeks Compensation for Non-Compensable Commute Time under the Portal-to-Portal Act.

Plaintiff asserts that he is entitled to compensation for time spent driving from Defendants' place of business to job sites. However, under the Portal-to-Portal Act, time spent commuting before and after a worker's principal job activities is not compensable as a matter of law.

#### 1.   The Portal-to-Portal Act and Its Exclusion of Commute Time

A brief history of this issue is instructive. In *Tennessee Coal, Iron & R. Co. v. Muscoda Loc. No. 123*, the Supreme Court held that the FLSA obligated employers to compensate employees for time spent traveling between mine portals and underground work areas. *Tennessee Coal, Iron & R. Co. v. Muscoda Loc. No. 123*, 321 U.S. 590, 598 (1944). Two years later, the Supreme Court in *Anderson v. Mt. Clemens Pottery Co.* similarly held that the FLSA obligated employers to compensate employees for "all time during which an employee is necessarily required to be on the employer's premises," including time spent walking to and from time clocks. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690-91 (1946). In response to the flood of litigation that followed these decisions, Congress enacted the Portal-to-Portal Act, which clarified the scope of compensable work under the FLSA.

As the Second Circuit explained, the Portal-to-Portal Act "was intended to relieve employers from liability for preliminaries, most of them relatively effortless, that were thought to fall outside the conventional expectations and customs of compensation." *Reich v. N.Y. City Transit Auth.*, 45 F.3d 646, 649 (2d Cir. 1995). The Act explicitly excludes certain categories of activities from compensable work time. Specifically, employers are not required to compensate employees for:

> (1) time spent traveling to and from "the actual place of performance of the principal activity or activities" of employment; or

5

>(2) time spent performing "activities which are preliminary to or postliminary to said principal activity or activities." 29 U.S.C. § 254(a).

The Supreme Court has clarified that "any activity that is integral and indispensable to a principal activity is itself a principal activity" and therefore compensable. *IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005). In *Integrity Staffing Sols. v. Busk*, the Supreme Court further explained that an activity is compensable under the FLSA only if it is "an intrinsic element" of the employee's principal activities and one that cannot be dispensed with. *Integrity Staffing Sols. v. Busk*, 574 U.S. 27, 37 (2014). The Second Circuit has provided further instruction, finding that "indispensable" means "necessary," and "integral" means "essential to completeness," and emphasizing that the activities must be both integral <u>and</u> indispensable to the principal activities to be compensable. *Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 592 (2d Cir. 2007) (finding that an indispensable <u>or required</u> activity does not meet the integral and indispensable standard when the activity is not also integral to the principal activity) (citing *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956)); *see also*, *Campbell v. Empire Merchants, LLC*, 16-cv-05643-ENV-SMG, 2018 WL 5456666, at *6 (E.D.N.Y. Aug. 27, 2018), *report and recommendation adopted*, 16-cv-05643-ENV-SMG, 2019 WL 2206065 (E.D.N.Y. May 22, 2019) ("To be 'integral and indispensable,' an activity must be 'necessary to the completeness or integrity of the whole' and constitute 'an intrinsic portion or element, as distinguished from an adjunct or appendage, of that whole.'").

Reaffirming these principles, the Supreme Court held in *Integrity Staffing* that the Portal-to-Portal Act expressly excludes from compensation any activities preliminary or postliminary to an employee's principal activity—those occurring before the workday begins or after it ends. *Integrity Staffing*, 574 U.S. at 33 (citing 29 U.S.C. § 254(a)(2)). Activities that have specifically been deemed non-compensable include "walking, riding, or traveling to and from the actual place

6

or performance of the principal activity or activities which such employee is employed to perform." 29 U.S.C. § 254(a).

### 2. Normal Commute Time Is Not Compensable under Established Law

Under well-settled precedent, normal commute time to a work site is not compensable. *See Kavanagh v. Grand Union Company, Inc.*, 192 F.3d 269, 271-72 (2d Cir. 1999) ("employers are not required to compensate employees for their normal travel between home and work"). This remains true even when an employee uses an employer-provided vehicle for commuting. *See Williams v. Epic Sec. Corp.*, 358 F. Supp. 3d 284, 298 (S.D.N.Y. 2019) (citing *Colella v. City of New York*, 986 F. Supp. 2d 320, 338 (S.D.N.Y. 2013)). The Federal Regulations explicitly state:

> An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home to work travel which is a normal incident of employment. This is true whether he works at a fixed location or at different job sites. Normal travel from home to work is not worktime. 29 C.F.R. § 785.35.

Similarly, New York courts have held that "simple commuting to and from work in an employer's vehicle, without more, is not compensable under the FLSA. *Manners v. State of New York*, 183 Misc. 2d 382, 390, 703 N.Y.S.2d 375, 380 (Ct. Cl. 2000), *aff'd*, 285 A.D. 2d 858, 727 N.Y.S.2d 547 (3d Dep't 2001). This is also true even if an employer restricts personal use of the vehicle during the commute. *Id.*; *see also*, 29 U.S.C. § 254(a) ("the use of an employer's vehicle for travel by an employee … shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area … and is subject to an agreement [between] the employer and the employee").

### 3. Incidental Activities During the Normal Commute Do Not Render It Compensable

Courts have consistently rejected claims for compensation where employees perform incidental tasks during their otherwise normal commute. *See Colella*, 986 F. Supp. 2d at 342–43

7

("Activities which are merely incidental to the use of an employer-provided vehicle for commuting at the beginning and end of the workday are similarly not considered part of the employee's principal activity or activities and therefore need not be compensable … *Merely transporting tools or supplies should not change the noncompensable nature of travel*") (quoting H.R. Rep. No. 104–585, at 5) (emphasis in original). Courts in this Circuit have reached similar conclusions in a variety of cases: *Reich*, 45 F.3d 646 (finding that Transit Authority canine unit handlers who were required to care for their dogs during their commute were not entitled to compensation for travel time); *Singh v. City of New York*, 524 F.3d 361 (2d Cir. 2008) (holding that New York City fire alarm inspectors who were required to carry inspection documents during their daily commute were not entitled to compensation); *Colella*, 986 F. Supp. 2d 320 (finding that FDNY Building Maintenance Division workers who were required to transport work equipment in their employer-provided utility vehicles were not entitled to compensation for travel time). Particularly important in this case, the Eastern District has found—along with a majority of courts—that "in the context of picking up tools or equipment, the employee must actually load the tools onto the truck, or do other work, in order for the workday to begin." *Medina v. Ricardos Mech., Inc.*, 1:16-cv-01407-NGG-JO, 2018 WL 3973007, at *4 (E.D.N.Y. Aug. 20, 2018) ("the court does not find it plausible that the mere picking up of a vehicle containing tools, without the need to load tools into the vehicle, renders the commute "integral and indispensable" to the workday").

    **4.    From March 1, 2021 through August 31, 2022, Plaintiff's Commute from Defendants' Place of Business to the Job Sites and Back Is Noncompensable as a Matter of Law**

Plaintiff's allegations, even when accepted as true for the purposes of this motion, fail to establish a viable claim for compensation under the Portal-to-Portal Act and governing precedent. His pre- and post-shift travel time—including transporting himself, another employee, and work-

8

related materials—falls squarely within the category of non-compensable commute time, as expressly excluded by federal and state law.

The Portal-to-Portal Act and its interpreting case law make clear that an employee's workday does not begin simply because he is traveling to his job location, even if he is driving a company vehicle, carrying or transporting work-related items, or transporting coworkers. 29 U.S.C. § 254(a); 29 C.F.R. § 785.35. The Supreme Court has made clear that preliminary and postliminary activities are non-compensable unless they are "integral and indispensable" to an employee's principal activities. *Integrity Staffing*, 574 U.S. at 37. Here, Plaintiff's driving obligations did not involve performing his primary job activity as a laborer at a worksite; rather, they were merely preliminary or postliminary travel functions that fall within the Portal-to-Portal Act's exclusion. *See Alvarez*, 546 U.S. at 29-30 (holding that activities are compensable only if they are an intrinsic element of an employee's primary job function).

Specifically, Plaintiff's allegations that he was required to report to Defendants' place of business at 7:00 a.m. to pick up the company vehicle and transport tools and a coworker to the job sites fail to convert this time to compensable work time. These activities do not constitute compensable work because they are incidental to his non-compensable commute and are not integral <u>and</u> indispensable to the principal activities he was employed to perform—i.e. manual laborer related to landscaping. Indeed, there is not a single allegation that Plaintiff had to load any tools, materials, supplies, or anything else into the vehicle prior to the commute; rather, Plaintiff admits in his Amended Complaint that he merely transported these objects that were already in the vehicle, along with another worker, to the job sites. *See* Amended Complaint, Ex. B, at ¶ 34.

The Second Circuit and district courts within this jurisdiction have repeatedly held that requiring an employee to carry materials, equipment, or documents during their commute does not

9

render travel time compensable. *See* cases *supra*. Further, courts have expressly rejected claims that an employer's control over the commute—such as requiring the use of a company vehicle or limiting personal use of that vehicle—converts non-compensable travel into compensable work. *See* cases *supra*. Thus, Plaintiff's assertion that he is entitled to compensation solely because he was required to transport materials or other employees is legally insufficient. His commute remains non-compensable as a matter of law.

*Medina v. Ricardos Mech., Inc.* is directly instructive. There, an employee brought suit against his former employer claiming that he was entitled to overtime compensation because he would regularly "drive in his own car to company headquarters, where he would pick up a company work van. He would then drive the van to his first work site in the morning, and he would return the van to company headquarters in the evening." *Medina*, 2018 WL 3973007, at *1. This drive time was not compensated. *Id.* The *Medina* Court held that the majority approach applies in this jurisdiction—to wit, picking up and driving a company vehicle from the employer's place of business to a job site without having to load it first renders the commute noncompensable drive time because the commute is not "integral and indispensable" to the workday. *Id.* at 4.

*Chase v. MADICORP* is likewise instructive. In *Chase*, an industrial staffing agency that supplied manufacturing and warehouse workforces to various industrial facilities filed a motion to dismiss its employees' wage claims. *Chase v. MADICORP*, 6:23-cv-00436-AMN-TWD, 2024 WL 841266, at *1 (N.D.N.Y. Feb. 28, 2024). Its employees' principal job activities consisted of "industrial labor" at "manufacturing facilities or warehouses." *Id.* at *4. The employer required its employees "to stay at hotels which were generally located 30 to 45 minutes away from the worksites[,]" and further required them to use employer-provided vehicles to pick up coworkers from other hotels and transport them to and from the job locations. *Id.* at 2. Certain employees

10

were also required to drive coworkers to and from a laundromat. *Id.* at 2. None of this commute time was compensated, even though the employees were required to perform these activities.

The *Chase* court squarely rejected the employees' claims, holding that the travel time occurred "before any principal industrial or manufacturing work had commenced" and was therefore non-compensable as a matter of law. *Id.* at 4. The court emphasized that the FLSA does not require compensation for activities that precede or follow an employee's "principal activities," and because the commute did not constitute part of the employees' principal activities—performing industrial labor at manufacturing facilities and warehouses—no compensation was owed. *Id.* at 4.

The same reasoning applied in *Medina* and *Chase* applies here as well. Plaintiff's allegations are materially indistinguishable from *Medina*. Although the *Medina* court declined to dismiss the wage claim in its entirety because the scope of the employee's vehicle-loading activities could not be determined, Plaintiff here concedes that he performed no loading or other substantive tasks before departing Defendants' premises. His workday therefore did not commence simply because he was required to pick up the company vehicle at Defendants' place of business. This distinction is critical: the mere act of retrieving and driving a company vehicle is insufficient to transform a non-compensable commute into compensable work.

Moreover, Plaintiff's claims are also very similar to those alleged in *Chase*. Here, Plaintiff's principal activities, by his own admission, consisted of manual landscaping labor. The only additional time Plaintiff claims as compensable is time spent transporting a coworker and tools from Defendants' place of business to job sites and back. Just as in *Chase*, these driving activities occurred before and after Plaintiff's principal workday and did not themselves constitute

11

any "integral and indispensable" component of his actual job duties—regardless of whether Defendants required him to drive.

In addition to *Chase* and *Medina*, Plaintiff's claims are also foreclosed by binding precedent found in *Reich*, *Singh*, and *Colella*. Taken together, *Chase*, *Medina*, *Reich*, *Singh*, and *Colella* make clear that Plaintiff's alleged pre- and post-shift driving duties—transporting coworkers, tools, and equipment to and from Defendants' place of business—fall squarely within the category of non-compensable commute activities expressly excluded by the Portal-to-Portal Act, 29 U.S.C. § 254(a). Accordingly, Plaintiff's FLSA and NYLL overtime claim during the period of March 1, 2021 through August 31, 2022 fails as a matter of law and must be dismissed with prejudice.

    **C.    Plaintiff Has Failed to State a Viable Claim for Unpaid Overtime during the Period of March 1, 2021 through August 31, 2022 under the FLSA or the NYLL**

To establish a claim for unpaid overtime compensation under the FLSA and the NYLL, a plaintiff must plausibly allege that they "worked in excess of forty (40) hours in a given workweek and did not receive overtime compensation for such work." *Erdemir v. Allstate Marble & Granite, Kitchens & Baths Inc.*, 704 F. Supp. 3d 337, 357 (E.D.N.Y. 2023), *aff'd*, 2025 WL 338551 (2d Cir. Jan. 30, 2025) (citing 29 U.S.C. § 207(a)(1); *Solis v. SCA Rest. Corp.*, 938 F. Supp. 2d 380, 395 (E.D.N.Y. 2013) (citing *Hosking v. New World Mortg., Inc.*, 602 F. Supp. 2d 441, 447 (E.D.N.Y. 2009))). The NYLL mirrors the FLSA's requirement. *See Erdemir*, 704 F. Supp. 3d at 361.

Here, Plaintiff has not alleged any compensable hours worked beyond forty (40) in any given week during the period of March 1, 2021 through August 31, 2022. According to the Amended Complaint, Plaintiff's regular work schedule was from 8:00 a.m. to 4:00 p.m., Monday through Friday—a standard forty (40)-hour workweek. *See* Amended Complaint, Ex. B, at ¶ 36. These allegations, on their face, fail to meet the threshold requirement for an overtime claim under

12

the FLSA or the NYLL because they do not suggest that Plaintiff ever exceeded forty (40) hours in a workweek.

Plaintiff's only claim to additional time worked relates to his pre- and post-shift drive time, during which he allegedly transported another employee and work-related materials to and from the worksite. *See* Amended Complaint, Ex. B, at ¶¶ 33-35, 39-40. However, as discussed *supra*, this time is non-compensable as a matter of law under the Portal-to-Portal Act and binding Second Circuit precedent. *See* 29 U.S.C. § 254(a); *Kavanagh*, 192 F.3d at 271-72.

Plaintiff's own allegations undermine any claim that he exceeded forty (40) compensable hours in a workweek. He admits that his scheduled workweek was limited to forty (40) hours, and his only purported additional time relates to his commute, which is non-compensable. Therefore, even if Plaintiff's allegations were accepted as true, he has failed to allege any scenario in which he exceeded forty (40) compensable hours per week, which is a necessary prerequisite for an unpaid overtime claim. Accordingly, Plaintiff's overtime claims under the FLSA and the NYLL during the period of March 1, 2021 through August 31, 2022 fail as a matter of law and must be dismissed.

**D.     Plaintiff Has Failed to State a Claim for Unpaid Regular Wages under the NYLL during the Period of March 1, 2021 through August 31, 2022**

The NYLL requires that employers pay manual workers "no later than seven (7) days after the end of the week in which the wages are earned, and if employment is terminated, no later than the regular payday for the pay period." *Erdemir*, 704 F. Supp. 3d at 368 (citing *Tacuri v. Nithin Constr. Co.*, 14-cv-02908 (CBA)(RER), 2015 WL 790060, at *4 (E.D.N.Y. Feb. 24, 2015) (citing N.Y. Lab. Law § 191(1))) (further citations omitted). "Employees are entitled to recover such unpaid wages." *Id.* (citing *Vega v. K & C Interior Constr. Corp.*, 18-cv-00182, 2018 WL 4376486,

13

at *3 (E.D.N.Y. Aug. 28, 2018), *report and recommendation adopted*, 18-cv-00182 (ARR), 2018 WL 4374911 (E.D.N.Y. Sept. 13, 2018) (citing 12 N.Y.C.R.R. § 142-2.2; N.Y. Lab. Law § 198)).

For the same reasons that Plaintiff's unpaid overtime claim under the FLSA and NYLL fails, his claim for unpaid regular wages under the NYLL must also fail as a matter of law. Plaintiff has not alleged any unpaid wages for time worked during the period of March 1, 2021 through August 31, 2022. As previously discussed, Plaintiff's regular work schedule was Monday through Friday, from 8:00 a.m. to 4:00 p.m., which amounts to a forty (40)-hour workweek. Plaintiff does not allege that he was underpaid or that he was not compensated for any of these regularly scheduled hours. Plaintiff's only purported basis for claiming additional unpaid wages relates to his pre- and post-shift drive time—which, as discussed *supra*, is non-compensable as a matter of law.

Further, as alleged in the Amended Complaint, Plaintiff was compensated on a daily rate basis throughout his employment with Defendants. *See* Amended Complaint, Ex. B, at ¶ 29. A daily rate compensates an employee for all hours worked in a given day, regardless of the specific number of hours performed. *See* 29 C.F.R. § 778.112. Thus, even assuming, *arguendo*, that Plaintiff's pre- and post-shift commute time was compensable—which, as demonstrated *supra*, it was not—Plaintiff's daily rate of pay would have fully compensated him for such time. Therefore, any alleged time Plaintiff spent driving before or after his regular work schedule would have been encompassed within his daily compensation and does not give rise to a claim for additional unpaid regular wages.

The same factual and legal deficiencies that undermine Plaintiff's unpaid overtime claim apply with equal force to his unpaid regular wage claim. As Plaintiff has failed to allege any facts

14

suggesting that he was not paid his regular wages during the period of March 1, 2021 through August 31, 2022, this claim fails as a matter of law and should be dismissed with prejudice.

### E. Plaintiff Has Failed to State a Claim for Defendants' Alleged Failure to Provide Wage Statements and Notices

NYLL Section 195(1) requires employers to provide employees, at the time of their hire, a written notice containing, *inter alia*, the employee's "rate or rates of pay and basis thereof, whether paid by the hours, shift, day, week, salary, piece, commission, or other; [and] allowances, if any, claimed as part of the minimum wage." N.Y. Lab. Law § 195(1)(a). Similarly, NYLL Section 195(3) requires employers to furnish employees with a wage statement with each payment of wages, which must include the "rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; [and] allowances," among other information. N.Y. Lab. Law § 195(3).

However, NYLL Sections 198(1-b) and 198(1-d) establish an affirmative defense for employers who fail to provide wage notices or statements. Specifically, these provisions provide a complete defense where "the employer made complete and timely payment of all wages due … to the employee who was not provided notice as required by [NYLL Section 195(1)]" or "statements as required by [NYLL Section 195(3)]." N.Y. Lab. Law §§ 198(1-b) and 198(1-d).

Plaintiff alleges in his Amended Complaint that he did not receive wage notices or statements during his employment. However, for the time period of March 1, 2021 through August 31, 2022, Plaintiff has not alleged any underlying violation of unpaid wages—either for regular wages or overtime compensation—that would give rise to a claim for failure to provide wage notices or statements. As discussed *supra*, Plaintiff's claims for unpaid overtime and regular wages are fatally deficient. Because Plaintiff has not established that any wages were improperly

15

withheld, his wage notice and wage statement claims for the period of March 1, 2021 through August 31, 2022 are rendered legally untenable and must be dismissed as a matter of law.

## V.     CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion to Partially Dismiss the Amended Complaint with prejudice for the time period March 1, 2021 through August 31, 2022 pursuant to Federal Rule of Civil Procedure 12(b)(6).

| | |
|---|---|
| Dated: Massapequa, New York<br>September 22, 2025 | The NHG Law Group, P.C.<br><br>_____<br>By: Keith E. Williams, Esq.<br>*Attorneys for the Defendants*<br>4242 Merrick Road<br>Massapequa, New York 11758<br>Tel: 516.228.5100<br>keith@nhglaw.com |

16